■ In the Matter of WILLIAM L. DONLON, Petitioner, v RICH-ARD P. MILLS, as Commissioner of Education of the State of New York, et al., Respondents. [689 NYS2d 260] —Mercure, J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Commissioner of Education denying petitioner's request for reinstatement to his former position as Superintendent of Schools for the Caledonia-Mumford Central School District.

Petitioner served as the Superintendent of Schools for the Caledonia-Mumford Central School District (hereinafter the District) from August 1, 1988 until August 29, 1995. As the result of an abortive project for the purchase and installation of four portable trailers that were intended to be used as temporary classrooms, the District's Board of Education filed disciplinary charges against petitioner. The District paid over $100,000 for the trailers, but was ultimately deprived of their use and also available State funding.

The statement of charges alleged that petitioner, *inter alia*, violated the requirement of Education Law § 408 that approval be obtained before purchasing a schoolhouse for a cost of more than $100,000, failed to comply with the requirements of 8 NYCRR 155.2 (a) for a construction project costing over $10,000, failed to comply with the requirements of the General Municipal Law relative to a public works project costing over $50,000, violated the statutory requirements relative to the letting of contracts on the basis of competitive bidding and providing for payment to contractors through progress payments rather than lump-sum payments, and failed to comply with the requirement that respondent Commissioner of Education issue a certificate of occupancy prior to the occupancy of a school structure. An extensive hearing was conducted, and the Board ultimately sustained six of the eight charges contained in the statement of charges and adopted a resolution discharging petitioner. An administrative appeal to the Commissioner was dismissed on findings that petitioner had received a fair hearing, was not denied due process at his disciplinary hearing despite the fact that certain Board members served dual

investigative and adjudicatory roles, and that the Board made adequate findings of fact.

Petitioner then commenced this CPLR article 78 proceeding, claiming in four separate causes of action that the Commissioner's decision was arbitrary and capricious, the penalty of termination was excessive and disproportionate to petitioner's actions, the hearing conducted by the Board denied petitioner due process of law because several Board members had prejudged the matter, and petitioner had no knowledge of the various statutes that he allegedly violated. Although agreeing with the Board's assertion that the appropriate standard to be applied is whether the Commissioner's decision was arbitrary and capricious, Supreme Court nevertheless proceeded to transfer the proceeding to this Court pursuant to CPLR 7804 (g) on the basis of its conclusion that a substantial evidence issue had been raised.

As a threshold matter, we agree with all parties' assertion that the proceeding was improperly transferred to this Court. It is established law that the proper standard to be applied in reviewing a determination of the Commissioner made pursuant to the Commissioner's jurisdiction under Education Law article 7 (*see*, Education Law § 310), is " 'whether the Commissioner's decision is arbitrary and capricious, was affected by an error of law or constitutes an abuse of discretion' " (*Matter of Cargill v Sobol*, 165 AD2d 131, 133, *lv denied* 78 NY2d 854, quoting *Matter of Board of Educ. v Ambach*, 142 AD2d 869, 870; *accord, Matter of Board of Educ. v Mills*, 250 AD2d 122, 125-126, *lv denied* 93 NY2d 803). Consequently, no substantial evidence issue could have been properly raised. In the interest of judicial economy, however, we will retain jurisdiction and determine the merits of the proceeding (*see, Matter of Forte v Mills*, 250 AD2d 882, 883, n 2).

In contending that the findings of guilt were arbitrary and capricious, petitioner primarily contends that because he is not a lawyer, architect or engineer, he was not aware of the various laws and regulations applicable to school district building projects and that it was the Board and its attorneys who were primarily responsible for noncompliance with the various legal provisions alleged in the statement of charges. We are not persuaded. In fact, the record indicates that petitioner played the central role in purchasing the temporary classrooms and in disregarding the applicable laws and regulations. Notably, petitioner initiated the visit to another local school district to view its portable classrooms and then contacted the vendor, negotiated a purchase price for the portable classrooms and

authorized the District's business manager to deliver the check for $105,000 to the vendor. In addition, petitioner directed the District's business manager to "take care of the paperwork" regarding the purchase agreement, selected a location for the portables, approved additional expenditures for the project without Board approval and authorized a faculty member to move materials into the portable classrooms before a certificate of occupancy was received.

The record also establishes petitioner's major role in bringing about the failure of the project and the resulting loss to the District. First, without advising the Board, petitioner issued a letter incorrectly stating that all of the work on the connecting link to the trailers was completed. Second, petitioner proceeded to purchase the portable classrooms without first researching, or having the District's attorneys research, the steps necessary to obtain Education Department approval and State aid for the classrooms. In addition, petitioner did not seek assistance from the District's attorneys in negotiating a price with or obtaining information about the vendor prior to authorizing payment in full for the portable classrooms. Third, Gary Hammond, Assistant Superintendent for Finance and Personnel for Genesee Valley BOCES, testified that he had previously sent petitioner a list of Department guidelines outlining the steps necessary for obtaining State aid for capital projects and, in fact, specific guidelines related to the acquisition and use of portable classrooms by public school districts. Under the circumstances, it cannot be seriously argued that petitioner did not possess the information necessary for obtaining Department approval of portable classroom projects.

We also agree with respondents' contention that petitioner has greatly exaggerated the role of the Board and the District's attorneys. Significantly, applicable legal provisions as well as petitioner's own contract with the District placed primary responsibility upon petitioner for following State regulations applicable to the portable classroom project. A superintendent of schools is charged with the power and duty to be the chief executive officer of the school district and to enforce all provisions of law and all rules and regulations relating to the management of the schools (see, Education Law § 1711 [2] [a], [b]). Further, pursuant to petitioner's employment agreement, he was required to perform any other duties as required by the Education Law and the rules and regulations of the Commissioner, and Hammond offered his opinion that the ultimate responsibility for ensuring compliance with the Department's requirements rested with petitioner as the Superintendent of Schools.

Julia Garver also testified at the disciplinary hearing regarding her role as the District's attorney, in general and as specifically related to the portable classroom project. Garver testified that she would not comment on a matter under discussion by the Board unless she was specifically asked for her comments, ordinarily by petitioner or one of the Board members. In the absence of a specific request, she would not follow up on any issues that had been raised. Notably, she testified that prior to June 8, 1993, petitioner never asked her to give legal advice on capital projects, Department requirements, competitive bidding or progress payments to contractors or vendors.

Petitioner's remaining contentions do not warrant extended discussion. We first reject petitioner's assertions of bias on the part of the Board. There is a presumption of integrity on those serving as adjudicators (*see, Matter of Rine v City of Sherrill*, 195 AD2d 961, *lv denied* 82 NY2d 660) and hearing officers are presumed to be free from bias (*see,* 10 NYCRR 51.17 [a]). "A mere allegation of bias is insufficient to set aside an administrative determination" (*Matter of Brigham v DeBuono*, 228 AD2d 870, 874, *lv denied* 89 NY2d 801). In order to prevail on his claim of bias, it was petitioner's burden to make a factual demonstration supporting the allegation of bias and evidence that the outcome flowed from it (*see, Matter of Warder v Board of Regents*, 53 NY2d 186, 197, *cert denied* 454 US 1125). Neither requirement has been satisfied here.

We are similarly unpersuaded by petitioner's claim of bias due to the fact that the Board was serving a dual investigatory and adjudicatory function. Notably, petitioner's employment contract with the District provided that, in the event disciplinary charges were brought, petitioner would "receive a fair hearing before the Board". In any event, familiarity with the facts of a case by a Board member does not require that member's disqualification (*see, Matter of 1616 Second Ave. Rest. v New York State Liq. Auth.*, 75 NY2d 158, 162).

As a final matter, we conclude that the penalty of dismissal was not disproportionate to petitioner's acts and omissions (*see, Matter of Pell v Board of Educ.*, 34 NY2d 222, 233). Although petitioner undoubtedly had good intentions when he initially sought the portable classrooms to fill the need for more school classroom space, his actions were careless from the start and eventually became reckless. Petitioner's certification of the completion of the connecting link and noncompliance with the various Department regulations constituted negligence in the performance of his duties, and he put school personnel at risk by allowing a faculty member to enter and

place property in a structure that had not been certified for occupancy. Petitioner's remaining contentions have been considered and found to be lacking in merit.

Mikoll, J. P., Crew III, Yesawich Jr. and Graffeo, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.